UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HAROLD E. MUMMEY,

    Plaintiff,

    v.                               CAUSE NO. 3:19-CV-571-JD-MGG

RON NEAL, et al.,

    Defendants.

<u>OPINION AND ORDER</u>

Harold E. Mummey, a prisoner without a lawyer, proceeds on Eighth Amendment claims against four defendants at the Indiana State Prison ("ISP") for issues related to the prison's treatment of his leg injuries. The defendants filed motions for summary judgment (ECF 62, 65). Pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), and Northern District of Indiana Local Rule 56-1(f), the defendants filed notices advising Mummey of his right to respond and submit evidence (ECF 64, 68). Mummey filed responses to both motions (ECF 77, 78) and the defendants filed replies (ECF 80, 81).

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## I. MATERIAL FACTS

Mummey suffers from chronic ankle pain from an injury sustained in 1992, which he says limits his ability to walk and climb stairs. ECF 77-1 at 29. He believes he needs to be housed on the bottom floor of a prison building so he does not need to climb stairs. *Id*. ISP accommodates these requests using a "flag pass" system. To receive a flag pass for a particular accommodation, the prisoner must submit a health care request form, then be seen by a nurse, and finally by a doctor, who determines whether the requested accommodation is appropriate. ECF 63-2 (Affidavit of Nancy Marthakis), ¶ 23. A flag pass can be temporary or permanent, at the doctor's discretion. *Id*., ¶ 9.

Mummey has received temporary flag passes intermittently during his incarceration at ISP.[1] ECF 66 at 2. For at least three months before the incident leading

---

[1] No party introduced evidence showing exactly when Mummey had a flag pass prior to this complaint. Medical notes indicate that he had a pass in 2012, but it was discontinued because he had a "history of abus[ing]" the pass. ECF 77-1 at 29.

2

to this complaint, he did not have a flag pass. *See* ECF 77-1 at 14-20; ECF 45 at 1-2. On June 22, 2018, he was moved to a cell that required him to climb several flights of stairs. ECF 45 at 1-2; ECF 66 at 2. On June 25, 2018, he went to prison officers in person demanding to be moved to a bottom-floor cell. ECF 45 at 1-2. Defendant Howard Wilson, a case manager at the prison, reviewed Mummey's records and found that he did not have a flag pass and therefore was not authorized to be placed in one of the "flag cells." *Id.* Wilson advised Mummey to fill out a health care request. *Id.* at 2. On June 25, 2018, Mummey filed a health care request form stating that he wanted his floor pass "renewed." ECF 63-8 at 12. He was told to refile his request and ask specifically to be seen by a "provider," who would then determine whether he qualified for a flag pass. *Id.*

On June 28, Mummey's injured ankle "gave out" while he was walking on the stairs, and he fell. *Id.* at 13. He did not report the fall until July 2, because he was not able to get a new health care request form. *Id.* He was seen by a nurse on July 3, who cleaned a cut above his left eye and gave him Naprosyn, a pain medication, in addition to the tramadol he was already receiving. *Id.* at 13, 14, 17. Dr. Nancy Marthakis, who had been treating him since "early 2018," ordered x-rays of his left ankle and left wrist and a diagnostic evaluation of his spine. Dr. Marthakis did not see him in person, but reviewed the test results, which revealed no significant abnormality to his wrist or ankle and concluded that any back pain was likely caused by gallstone or kidney issues. *Id.* at 19; ECF 63-2, ¶¶ 8, 22.

After being seen by the nurse on July 3, Mummey continued to make medical requests. On July 5, he wrote: "still having problems with my left hand + lower back . . . Also need to have doctor re-examine left ankle." ECF 77-1 at 63. On July 12, after a follow-up request, a nurse responded: "You were seen 7/3, meds were prescribed and x-rays taken. This will take a little while to heal. If you are still in pain after these medications are gone, write another [request] for a follow-up." *Id*. at 64. Mummey believes that not having a flag pass during this time left him in a "dangerous situation." Deposition of Harold Mummey (ECF 73-4), 42:1-19.

After several follow-up requests, he was eventually seen by Dr. Marthakis on August 10, 2018. *Id*. at 65-68; ECF 63-2 at 20. At that appointment, Mummey specifically asked that Dr. Marthakis approve him for a permanent flag pass. The doctor noted that Mummey once had a pass for the "200 level or below," but it was discontinued in 2012 because he was seen climbing to higher floors. ECF 63-2 at 20. On that basis, Dr. Marthakis granted him a 3-month temporary flag pass, subject to renewal based on medical need. *Id*. at 22. The doctor also treated his back and wrist pain, but concluded that they were not caused by his fall on the stairs. *Id*.

Mummey continued to receive care for these and other medical complaints over the following months. *See* ECF 63-2, ¶¶ 10-12. On November 1, 2018, Dr. Marthakis renewed his flag pass for one year. *Id*., ¶ 12. Nonetheless, Mummey was unhappy with how his flag pass requests were handled, and on April 30, 2019 he signed a form refusing to be seen by Dr. Marthakis. *Id*.; ECF 62-2 at 1, 4. Since the prison would not permit him to change doctors and he refuses to see Dr. Marthakis, he is no longer

attending chronic care appointments. ECF 63-4, 17:9-22, 71:8-20. Nonetheless, Dr. Marthakis remains available to provide treatment to Mummey as needed. ECF 63-2, ¶ 25. He is now being held in a cell that does not require him to climb up or down stairs, and stated at his deposition that he "do[es]n't really need" any other accommodation. ECF 63-4, 90:20-22, 91:2-15.

## II. ANALYSIS

Mummey proceeds on four Eighth Amendment claims: (1) against Howard Wilson, the case manager, for failing to accommodate his disability; (2) against Dr. Marthakis for failing to grant him a permanent flag pass; (3) against Wexford Health Services for maintaining a policy of issuing ninety-day passes to inmates with permanent disabilities; and (4) against ISP's warden, for injunctive relief to obtain disability accommodations.

**A. Howard Wilson**

Mummey argues that Wilson should have moved him to a cell that did not require stairs, even though he did not have a flag pass. Inmates are entitled to adequate medical care, and Wilson can be held liable if he was deliberately indifferent to Mummey's serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing that: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In this case, Mummey has not shown that Wilson was deliberately indifferent to a serious medical need. The undisputed evidence shows that at the time of Mummey's

5

request to Wilson, he did not have a flag pass, and had not had one for at least several months. Wilson verified that Mummey did not have a flag pass and told him how to get one. Mummey argues that since this was a safety issue, Wilson could have been allowed to move him without medical approval. Accepting this as true for summary judgment purposes, the mere fact that Mummey demanded to be moved did not obligate Wilson to move him immediately. Mummey alleges he told Wilson he was at a "substantial risk of serious harm," but he has not introduced evidence showing that he needed to be moved so imminently that his request could not be addressed by medical staff. It was not deliberate indifference for Wilson to defer to a doctor's judgment as to whether – and how urgently – Mummey needed to be moved. "The most one can say is that [Wilson] did nothing, when [he] might have gone beyond the requirements of [his] job and tried to help" Mummey. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). This does not state a claim under section 1983. *Id*.

### B. Dr. Marthakis

Next, Mummey alleges that Dr. Marthakis acted with deliberate indifference to his serious medical needs by declining to give him a permanent flag pass. For medical professionals to be held liable for deliberate indifference to an inmate's medical needs, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). However,

6

> medical professionals are not required to provide *proper* medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one *proper* way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. The Constitution is not a medical code that mandates specific medical treatment.

*Id.* (quotation marks, citations, parenthesis, and brackets omitted; emphasis added). Courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quotation marks and citation omitted).

While Mummey believes that Dr. Marthakis should have given him a pass on July 2, after she became aware[2] of his request and the fact that he fell, he has not presented evidence showing that the failure to grant him a *permanent* pass was deliberate indifference. The evidence indicates that after his fall, Dr. Marthakis reviewed his medical record and his x-rays, which showed that he had no flag pass in the months preceding the fall, and that the fall did not cause any structural damage to his ankle. She eventually gave him a renewable temporary pass on August 10, 2018, after seeing him in person. That decision was based on her meeting with Mummey, and her analysis of his medical records and the records showing that he had abused a previous pass given for the same injury. That judgment, like any other medical

---

[2] Although Mummey says he has always been entitled to a flag pass, he has not presented evidence showing that Dr. Marthakis knew he wanted a flag pass prior to July 2, 2018, when he reported his fall. Whatever his needs were before that date, he has not presented evidence that Dr. Marthakis herself was deliberately indifferent to them.

judgment, is entitled to substantial deference. *See, e.g., Fitzgerald v. Greer*, 324 F. App'x 510, 515 (7th Cir. 2009) (declining to question doctors' treatment decisions premised on a lack of objective indicators of injury and history of malingering).

Even if Mummey did need accommodations indefinitely, he has not shown that a system of renewable temporary passes was not appropriate, or that Dr. Marthakis would have known that renewable temporary passes would not meet his needs. Although Mummey believes that the "red tape" involved in renewing passes was too onerous, *see supra*, he provides no evidence that Dr. Marthakis knew he would have difficulty renewing them. To the contrary, the evidence indicates that Dr. Marthakis herself timely renewed his pass until he refused to see her in April 2019. This does not demonstrate deliberate indifference by Dr. Marthakis.

### C. Wexford Health Services

Mummey proceeds on a claim that Wexford Health Services, the corporation that provides prison medical services, violated the Eighth Amendment by maintaining a practice of issuing ninety-day passes to inmates with permanent disabilities. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). "Corporate liability exists "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Specifically, Mummey alleges that because his ankle problems are ongoing, he should be given a permanent pass. He believes that a system of renewable temporary

8

passes wrongly places the burden on him to make a medical request and see the medical staff. He alleges that in the past, his flag passes have lapsed because of "unorganized record keeping" by the medical staff. ECF 74-6 at 6.

Mummey has not shown that Wexford's policies[3] or practices have caused him to receive constitutionally inadequate care. It is undisputed that Wexford's policy allows for permanent flag passes at the discretion of the medical staff. The individual doctors and nurses decide what kind of pass, if any, is appropriate. Although Mummey believes he should get a permanent pass instead of temporary ones, he presents no evidence that Wexford itself influenced the doctor's decision not to grant him a permanent pass.

Nor has Mummey shown that Wexford is responsible for undue administrative burdens or errors in getting passes renewed. The onus is on Mummey to file the appropriate request, but there is no evidence that Wexford obstructs that process. The individual doctors and nurses review the prisoners' health care requests and decide what kind of care they need based on the injuries they have, and how soon. To the extent there were errors with Mummey's passes – because the medical personnel did not properly prioritize his requests, or failed to renew his passes when they should have – Mummey has not presented evidence showing that those are the result of Wexford's policy, rather than individual error.

---

[3] Mummey concedes that he cannot point to a particular policy implicating Wexford. He asserts that shortly after he filed this lawsuit, his chronic care visits were scheduled twice a year instead of four times a year – but is it not clear that this was attributable to Wexford, or how this is evidence of a policy or practice that would deny him a medically necessary flag pass.

### D. Warden Ron Neal

Finally, Mummey brings an injunctive relief claim again Ron Neal, the warden at ISP, for injunctive relief to obtain disability accommodations to which he is entitled under the Eighth Amendment. The Eighth Amendment protects prisoners from being subjected to cruel and unusual punishment, including conditions of confinement that pose a substantial risk of serious harm. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Therefore, a failure to accommodate a prisoner's disability can give rise to an Eighth Amendment claim. *Wilke v. Cole*, 630 F. App'x 615, 619 (7th Cir. 2015). "Conditions of confinement must be severe to support an Eighth Amendment claim; 'the prison officials' act or omission must result in the denial of the minimal civilized measure of life's necessities.'" *Morissette v. Peters*, 45 F.3d 1119, 1123 (7th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Defendant Ron Neal, ISP's Warden, has both the authority and the responsibility to ensure that Mummey receives the protection required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

In this case, Mummey has not introduced evidence showing that his current conditions of confinement pose a substantial risk of serious harm. Mummey does not dispute that he is now being held in an area where he does not need to climb stairs, and stated that he does not need any accommodation beyond what he is getting. Although the record is not clear as to whether Mummey currently has a flag pass, the evidence indicates that the prison's accommodations – through a flag pass or other means – have relieved him of any substantial risk of serious harm, so there is no injunctive relief to

grant Mummey under the Eighth Amendment. There is also no dispute that, despite Mummey's refusal to see Dr. Marthakis, the doctor remains available to address any further concerns. Although Mummey would prefer to see a different doctor, that does not justify injunctive relief under the Eighth Amendment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (prisoners are "not entitled to demand specific care[, nor are they] entitled to the best care possible").

For these reasons, the court:

(1) GRANTS the motions for summary judgment (ECF 62, 65);

(2) DISMISSES this case; and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against the plaintiff.

SO ORDERED on July 9, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT